UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
OWENSBORO DIVISION

**CIVIL ACTION NO. 4:04CV-171-M**

**TERESA J. THOMAS**                                                                    **PLAINTIFF**

**v.**                        **MEMORANDUM OPINION AND ORDER**

**KMART CORPORATION**                                                              **DEFENDANT**

\* \* \* \* \* \* \* \* \* \* \* \*

This matter is before the Court on a motion by Defendant for summary judgment [DN 49]. The Plaintiff brought this lawsuit claiming that the Defendant discriminated against her on account of her age in violation the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.*, and on account of her race in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e) *et seq.* On August 29, 2006, oral arguments were held in this matter. Fully briefed and argued, this matter is ripe for decision. For the reasons discussed above, the Defendant's motion for summary judgment is **granted**.

### I. STANDARD OF REVIEW

In order to grant a motion for summary judgment, the Court must find that the pleadings, together with the depositions, interrogatories and affidavits, establish that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. The moving party bears the initial burden of specifying the basis for its motion and of identifying that portion of the record which demonstrates the

absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Once the moving party satisfies this burden, the non-moving party thereafter must produce specific facts demonstrating a genuine issue of fact for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).

Although the Court must review the evidence in the light most favorable to the non-moving party, the non-moving party is required to do more than simply show that there is some "metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). The Rule requires the nonmoving party to present "*specific facts* showing that there is a *genuine* issue for trial." Fed. R. Civ. P. 56(e) (emphasis added). Moreover, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." Anderson, 477 U.S. at 252; see also Gregory v. Hunt, 24 F.3d 781, 784 (6th Cir. 1994).

## II. STATEMENT OF FACTS

Plaintiff, Teresa Thomas, was hired by Defendant, Kmart Corporation, in October of 1982. Kmart terminated Thomas' employment on February 19, 2004. Thomas is African-American and was 44 years of age at the time of her termination. She had been employed at the Kmart Parrish Avenue retail store in Owensboro for approximately 22 years, most recently as Lead Unit Pricing Manager.

As the store's only Lead Unit Pricing Manager, Thomas was the individual primarily responsible for activating the price changes authorized by Kmart's corporate headquarters.

Daily price changes were typically sent electronically to retail stores in a price list change report. Each day, Thomas would obtain a printed copy of the report and enter the data into the inventory management system to activate the price changes. Historically, only price changes that were expressly included in the price list change report could be made by Thomas. However, in June of 2003, Kmart's corporate headquarters launched a special inventory reduction program, the "Pre-2003 Discontinued Merchandise Program." Under this program, retail stores were granted limited authority to initiate price reductions outside of the price list change reports, but only with respect to discontinued merchandise that had been in the store's inventory since on or before 2003. The Pre-2003 Price Reduction Policies expressly limited the amount of any single price reduction a retail store manager could make to 10% of the original price.

With the implementation of the Pre-2003 Discontinued Merchandise Program, Thomas as Lead Unit Pricing Manager would begin her shift by obtaining a copy of the printed price list change report from Kmart's corporate headquarters and by retrieving any sheets from Edward Rudovich, the Store Manager, with his handwritten notations reflecting any reductions on pre-2003 items. At the end of the day, an Item Maintenance Report reflecting all price changes activated that day throughout the Parrish Avenue store was downloaded from the system, reviewed and signed by Rudovich, and forwarded to Kmart's corporate headquarters.

Shortly after the end of the holiday season in January of 2004, the Parrish Avenue Store's Loss Prevention Manager, Jennifer Moody, received a report that three employees,

Thomas, Shelly Blandford and Donna Sadler, purchased holiday items that had been significantly marked down. The purchases triggered suspicion because they consisted of items that ordinarily should have sold out before the end of the holiday season. Moody and the District Loss Prevention Manager, Todd Stach, initiated an investigation to determinate whether these employees had violated Company policy by hiding merchandise in the stockroom in order to purchase it after it went on clearance.

As a part of this investigation, Moody reviewed the associate purchase logs and discovered that on October 8, 2003, Thomas purchased a number of items at drastically reduced prices, including a 32-inch television for $25, an Elite Zoom Camera for $2, a cordless phone for $.50, a CD-clock radio for $5, and an audio system for $1. A review of the Item Maintenance Report revealed that with respect to each item, Thomas had activated price reductions of 90% or more in the inventory management system the morning she made the purchases.

When Moody and Stach interviewed Thomas as part of their investigation, Thomas admitted that she had violated Kmart's policy by hiding merchandise in order to purchase it when it went on clearance. Thomas also admitted that she had entered the 90% price reductions in question on October 8, 2003. However, Thomas claimed that she had entered the 90% price reductions pursuant to the handwritten sheets from Rudovich. When questioned, Rudovich stated that at no time during the Pre-2003 Discontinued Merchandise Program did he ever authorize Thomas to reduce the price of an item 90% at one time.

Moody and Stach reported their findings from their investigation to Kmart's

Operational District Manager, James Wofford.   Wofford is an African American and over the age of 40.  (Ed Rudovich Dep. at 65).  Wofford concluded that Thomas misappropriated Kmart's assets and after consultation with Kmart's regional managers and Stach, determined that termination was the appropriate sanction for Thomas' conduct.  Wofford also determined that the other two employees, Blandford and Sadler, should receive corrective counseling for holding back merchandise.  (James Wofford Aff. at ¶ 3.)  At the direction of Wofford, Rudovich communicated to Plaintiff that she had been terminated for misappropriation of Kmart's assets.

Based on the events described above, Plaintiff filed this action claiming that the Defendant's decision to terminate her was based on her race and age.  At oral arguments on this matter, Plaintiff withdrew her age discrimination claim.  Defendant seeks summary judgment arguing that (1) Plaintiff has failed to establish a prima facie case of race discrimination and (2) Plaintiff has failed to establish that the Defendant's proffered nondiscriminatory reason was merely a pretext for intentional discrimination.

### III. DISCUSSION

Title VII makes it unlawful for an employer "to discharge any individual, or otherwise to discriminate against any individual with respect to . . . compensation, terms, conditions, or privileges of employment, because of such individual's race." 42 U.S.C. § 2000e-2(a)(1). In a Title VII race discrimination claim, a plaintiff bears the initial burden of setting forth a prima facie case of discrimination by the defendant.  Talley v. Bravo Pitino Restaurant, Ltd., 61 F.3d 1241, 1246 (6th Cir. 1995) (citing McDonnell Douglas Corp. v. Green, 411 U.S. 792,

802 (1973)). "A plaintiff may establish a prima facie case of discrimination either by presenting direct evidence of intentional discrimination by the defendant . . . or by showing the existence of circumstantial evidence which creates an inference of discrimination." Id. at 1246 (citations omitted). "'Direct evidence of discrimination is that evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions.'" Briggs v. Potter, ___ F.3d ___, 2006 WL 2641971, *6 (6th Cir. September 15, 2006)(citing Wexler v. White's Fine Furniture, Inc., 317 F.3d 564, 570 (6th Cir. 2003) (en banc)).

Lacking direct evidence of discrimination, a plaintiff may utilize the burden-shifting standard set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), to establish her case. Under this standard, a plaintiff must show (1) that she was a member of a protected class; (2) that she was discharged or subject to an adverse employment decision; (3) that she was qualified for the position; and (4) that she was replaced by a person outside of the protected class or that similarly situated non-protected employees were treated more favorably. Talley, 61 F.3d at 1246; Mitchell v. Toledo Hosp., 964 F.2d 577, 582 (6th Cir. 1992). After the plaintiff has set forth a prima facie case, which creates a presumption of unlawful discrimination, the burden shifts to the defendant to state a legitimate, nondiscriminatory reason for the adverse employment decision. Talley, 61 F.3d at 1246 (citing Texas Dept of Community Affairs v. Burdine, 450 U.S. 248, 253-55 (1981)). Once the defendant puts forth a legitimate reason, the burden shifts back to the plaintiff to produce evidence that the defendant's proffered reason is a pretext for discrimination. Humenny v.

Genex Corp., 390 F.3d 901, 907 (6th Cir. 2004); Briggs, 2006 WL 2641971, *6.

Defendant argues that summary judgment on Plaintiff's race discrimination claim is appropriate because Plaintiff has failed to establish a prima facie case of race discrimination. Defendant argues that Plaintiff has failed to demonstrate that she was replaced by a person outside of the protected class or that she was treated less favorably than other similarly situated individuals. In the alternative, Defendant argues that Plaintiff has failed to demonstrate that Defendant's legitimate, nondiscriminatory reason for terminating her is a mere pretext for intentional race discrimination. Plaintiff disagrees arguing that the McDonnell Douglas framework is inapplicable because she has presented direct evidence of racial animus. Alternatively, Plaintiff argues that she has both satisfied her prima facie case under the burden-shifting analysis and demonstrated that Defendant's legitimate, non-discriminatory reason was a mere pretext. The Court will address these arguments in turn.

### A.  DIRECT EVIDENCE OF DISCRIMINATION

The Court finds unpersuasive Plaintiff's argument that she possesses direct evidence of race discrimination. In support of this contention, Plaintiff argues that Donna Sadler, Shelly Blanford, and Plaintiff admitted holding back merchandise. Sadler and Blandford are Caucasian department managers at the store. Plaintiff submits that Kmart merely reprimanded the two Caucasian employees for this conduct, but terminated Plaintiff. Additionally, Plaintiff argues that because she was acting at the direction of her supervisor when she discounted the items in question, any disciplinary action arising out of the pricing of the discontinued items was not appropriate. Therefore, according to Plaintiff, the alleged

7

disparity in the disciplinary treatment between Plaintiff and the two Caucasian employees for holding back merchandise constitutes direct evidence of race discrimination.

"In discrimination cases, direct evidence is that evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions." Jacklyn v. Schering-Plough Healthcare Products Sales Corp., 176 F.3d 921, 926 (6th Cir.1999). Plaintiff's evidence does not constitute direct evidence of race discrimination because it requires the Court to infer that she was terminated because of her race. This evidence instead constitutes circumstantial evidence and, therefore, is subject to review under the McDonnell Douglas framework.

### B.  PRIMA FACIE CASE

Defendant argues that Plaintiff failed to establish that she was replaced by a person outside the protected class or that she was treated less favorably than a similarly situated non-protected individual. Without direct evidence of race discrimination, the Court must utilize the burden-shifting standard set forth in McDonnell Douglas. Defendant concedes that Plaintiff is a member of a protected class, that Plaintiff was qualified for her position, and that Plaintiff suffered an adverse employment action. The question before the Court is whether Plaintiff was replaced by a person outside the protected class or whether similarly situated non-protected employees were treated more favorably than Plaintiff.

#### 1.  Replacement by a Person Outside the Protected Class

Store Manager Edward Rudovich testified that when Thomas was terminated, the remaining five department managers were reassigned the duty of pricing the items.

8

(Rudovich Dep. at 69-70.) These department managers were Caucasian. Plaintiff argues that because her job duties were assumed by the five remaining Caucasian department managers, she was replaced by a person outside of her protected class and, therefore, she has satisfied the fourth element of the prima facie case. However, this argument is not consistent with the case law. "[A] person is not replaced when another employee is assigned to perform the plaintiff's duties in addition to other duties, or when the work is redistributed among other existing employees already performing related work." Barnes v. Gencorp, Inc., 896 F.2d 1457, 1465 (6th Cir.), cert. denied, 498 U.S. 878 (1990); Grosjean v. First Energy Corp., 349 F.3d 332, 336 (6th Cir. 2003), 541 U.S. 1010 (2004). Based on this case law, the Court finds that Plaintiff was not replaced by a person outside of her protected class.

### 2. Similarly Situated

Likewise, Defendant argues that Plaintiff has not shown that she was treated differently than similarly-situated non-protected employees and, therefore, has failed to satisfy the fourth element of the prima facie case. Plaintiff claims that she was treated differently than Shelly Blandford and Donna Sadler, two Caucasian department managers at the Kmart Parrish Avenue store. Plaintiff argues that both Blandford and Sadler were similarly situated to Plaintiff because they were managers that reported to head store manager, Ed Rudovich; they were at the same pay level; and they were accused of misconduct of comparable seriousness. Plaintiff contends that a jury could reasonably conclude that her race was a motivating factor in Kmart's decision to terminate her employment because although Blandford and Sadler were also found to have held back

merchandise, they received corrective counseling while she was terminated.

In establishing that a person is similarly situated, a "plaintiff need not demonstrate an exact correlation with the employee receiving more favorable treatment in order for the two to be considered 'similarly-situated.'" Ercegovich v. Goodyear Tire & Rubber Co., 154 F.3d 344, 352 (6th Cir.1998); Wright v. Murray Guard, Inc., 455 F.3d 702, 709-710 (6th Cir. 2006). Rather, to establish that an employee is an appropriate comparator, "'the plaintiff [must] demonstrate that he or she is similarly situated to the [claimed comparator] in all *relevant* respects.'" Wright, 455 F.3d at 710 (quoting Ercegovich, 154 F.3d at 353).

In the disciplinary context, the Sixth Circuit has held that to be found similarly situated, "the plaintiff and [her] proposed comparator must have engaged in acts of '*comparable seriousness*.'" Id. (quoting Clayton v. Meijer, Inc., 281 F.3d 605, 611 (6th Cir. 2002)). To make this assessment, the Court looks "to certain factors, such as whether the individuals 'have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it.'" Wright, 455 F.3d at 710 (quoting Ercegovich, 154 F.3d at 352 (citation omitted))

The Court concludes that Plaintiff cannot be considered similarly situated to Blandford and Sadler with respect to her job position or the alleged misconduct. First, while Plaintiff, Blandford, and Sadler were each department managers, reported to the store manager, and received essentially the same salary, the record indicates that their job responsibilities were different. Plaintiff was the only employee in the Lead Unit Pricing

10

Manager position at the Parrish Avenue store. Her job duties as Lead Unit Pricing Manager were completely different from Sadler and Blandford's duties as department managers. Plaintiff was the only individual primarily responsible for activating price changes authorized by Kmart's corporate headquarters or the store manager. As the only manager with the power to activate store-wide price reductions, Plaintiff's job required a higher level of trust, responsibility and accountability than was required of the other department managers. Clearly, the work performed by Plaintiff as Lead Unit Pricing Manager was not substantially equal to the work performed by Blandford and Sadler given that the Lead Unit Pricing Manager position required skill, effort, and responsibility different than that of the department managers. See Hill v. Forum Health, 2006 WL 162967, *7 (6th Cir. Jan. 20, 2006)(comparing plaintiff's duties with the duties included in the non-protected employee's responsibilities and concluding that the two employees were not similarly situated); Pierce v. Commonwealth Life Insurance Co., 40 F.3d 796, 802 (6th Cir. 1994)(distinctions in employment status and job responsibilities in determining whether two employees were similarly situated).

  Second, Plaintiff cannot be considered similarly situated to Sadler and Blandford in terms of the nature and/or seriousness of the misconduct leading to Kmart's decision to terminate her employment. While Plaintiff, Blandford, and Sadler all violated Kmart's hold-back policy, Plaintiff also allegedly activated price reductions which exceeded her authority and then purchased many of those items at drastically reduced prices that same day. Plaintiff allegedly engaged in not one, but two separate acts of misconduct. Plaintiff's conduct, if

11

true, was more serious than that of Blandford and Sadler. See Wright, 455 F.3d at 710-711. Accordingly, Plaintiff has failed to establish the fourth element of her prima facie case of race discrimination.

Notwithstanding this decision, the Court will examine Kmart's nondiscriminatory explanation for its decision to terminate Plaintiff and the Plaintiff's evidence of pretext.

### C. LEGITIMATE, NONDISCRIMINATORY REASON

To rebut a prima facie case, the Defendant must set forth some legitimate, nondiscriminatory reason for its decision. Kmart has articulated the reason why it terminated Plaintiff – misappropriation of Kmart's assets. Operational District Manager, James Wofford, testified that based on the internal investigation by Moody and Todd Stach, District Loss Prevention Manager, he concluded that Plaintiff, Blandford, and Sadler violated a Company policy prohibiting employees from hiding or holding back merchandise. Wofford also concluded that on October 8, 2003, Plaintiff exceeded her authority as Lead Unit Pricing Manager by reducing the price of certain items by 90%, an amount that exceeded the 10% price reduction authorized by Kmart's corporate headquarters; and later that same day, Plaintiff took advantage of her unauthorized reductions by purchasing many of the affected items. Wofford stated that as Operational District Manager, he "concluded that Thomas' conduct amounted to a misappropriation of Kmart's assets and after consultation with Kmart's regional managers and Stach, determined termination was the appropriate sanction for Thomas' conduct." (Wofford Aff. at ¶ 6.)

Wofford stated that he was also responsible for the decision to issue corrective

counseling to Blandford and Sadler, who were also found to have violated Company policy of holding back merchandise. (Id. at ¶7.) According to Wofford, "the difference in disciplinary sanctions was justified due to the fact that as Lead Unit Pricing Manager, Thomas' position required a higher level of trust, confidence and responsibility than the Department Manager position held by these other employees, and the fact that Thomas violated two separate and distinct Company policies, one of which represented a far more egregious breach of duty than the violation committed by Blandford and Sadler." (Id.) The Court concludes that Kmart has articulated a legitimate, nondiscriminatory reason for terminating Plaintiff. See Manzer v. Diamond Shamrock Chemicals Co., 29 F.3d 1078, 1082 (6th Cir. 1994). Therefore, the burden then shifts to the Plaintiff to provide evidence that Defendant's proffered explanation is a mere pretext for intentional race discrimination.

### D. PRETEXT

To prove pretext, the Plaintiff must show by a preponderance of the evidence either "(1) that the proffered reasons had no basis in fact, (2) that the proffered reasons did not *actually* motivate [her] discharge, or (3) that they were *insufficient* to motivate discharge." Manzer v. Diamond Shamrock Chemicals Co., 29 F.3d 1078, 1084 (6th Cir. 1994). Plaintiff "must allege more than a dispute over the facts upon which [her] discharge was based." Braithwaite v. Timken Co., 258 F.3d 488, 494 (6th Cir. 2001). "[She] must put forth evidence which demonstrates that the employer did not 'honestly believe' in the proffered non-discriminatory reason for its adverse employment action." Id. In order to determine whether the defendant had an "honest belief" in the proffered basis for the adverse

employment action, the Court considers "whether the employer can establish its 'reasonable reliance' on the particularized facts that were before it at the time the decision was made." McConnell v. Swifty Transp., Inc., 2006 WL 2457077, *4 (6th Cir. August 23, 2006) (citing Braithwaite, 258 F.3d at 494). In Smith v. Chrysler, the Sixth Circuit noted that

> [i]n deciding whether an employer reasonably relied on the particularized facts then before it, we do not require that the decisional process used by the employer be optimal or that it left no stone unturned. Rather, the key inquiry is whether the employer made a reasonably informed and considered decision before taking an adverse employment action.

155 F.3d 799, 807 (6th Cir. 1998). Importantly, the Sixth Circuit held that the district court "must not second guess the business judgment of the employer, but simply evaluate 'whether the employer gave an honest explanation of its behavior.'" McConnell, 2006 WL 2457077, *5 (quoting Hedrick v. W. Res. Care Sys., 355 F.3d 444, 462 (6th Cir.2004)).

Plaintiff argues that the proffered reason for her discharge had no basis in fact. Plaintiff contends that she made the price adjustments of the items in question at the direction of her store manager, Ed Rudovich. Plaintiff asserts that when Kmart corporate headquarters raised the prices the next day on some of these items, it was actually adjusting Rudovich's actions, not those of Plaintiff. In support of her argument, Plaintiff contends that the Kentucky Unemployment Insurance Commission decision awarding her unemployment benefits demonstrates that she was discharged for reasons other than misconduct. In fact, Plaintiff asserts that she was terminated based upon trumped up charges that the Kentucky Unemployment Insurance Commission found had no merit. Plaintiff submits that the decision of the Kentucky Unemployment Insurance Commission is final and entitled to

14

preclusive effect.[1]

Additionally, Plaintiff submits the affidavits of two individuals, Don Sanders, an African-American former Kmart employee, Walt Horne, an African American customer, to demonstrate racial animus by Kmart. According to the affidavit of Don Sanders, he was "constructively discharged" by Kmart for stealing merchandise. (Don Sanders Aff. at ¶ 12.) Sanders states that his discharge resulted from Jennifer Moody's investigation and unfounded accusations of stealing from Kmart. Similarly, Walt Horne, a customer at the Parrish Avenue store, states that he felt he was subject to racial profiling by Jennifer Moody because she followed him closely in the store and "invad[ed] [his] personal space." (Walt Horne Aff. at ¶ 4.) Horne contends that he reported Moody's conduct to the store manager and the manager threaten to call the police on Horne. (Id.) Plaintiff maintains that this evidence shows that other African American employees and customers were subject to discriminatory practices by Moody and Rudovich.

First, the Court rejects Plaintiff's argument with respect to the preclusive effect of the Kentucky Unemployment Insurance Commission's award of unemployment benefits. Contrary to Plaintiff's argument, the Sixth Circuit has held that a Kentucky Unemployment

---

[1]Plaintiff also relies on an April 2004 Item Master Detail Report and Employee Purchase Logs for her assertion that 90% markdowns on discontinued items were common, and therefore, Defendant's proffered reason is false. However, these documents do not support Plaintiff's claim of pretext. It is not clear from these reports whether the items in question were sold pursuant to the Pre-2003 Discontinued Items Program or whether the markdowns were authorized by corporate headquarters. Furthermore, even if some of these items were pre-2003 discontinued items, there is no indication whether the markdowns shown on the reports originated from an original price or a clearance price.

Insurance Commission's decision awarding a plaintiff unemployment benefits does not "have issue-preclusive effect upon Title VII claims." Hicks v. Floyd County Board of Education, 99 Fed. Appx. 603, 604 (6th Cir. 2004) (citing University of Tennessee v. Elliott, 478 U.S. 788, 799 (1986)). See also Berrier v. Bizer, 57 S.W.3d 271, 281 (Ky. 2001).

Second, Plaintiff's allegations that Jennifer Moody and Ed Rudovich engaged in discriminatory conduct toward Sanders and Horne fails to raise a genuine issue of material fact that Defendant's legitimate nondiscriminatory explanation was a pretext for race discrimination. Plaintiff bases much of her discrimination claim on conduct she attributes to Jennifer Moody, the Loss Prevention Manager for the Kmart Parrish Avenue store. However, the record reflects that while Moody participated in the investigation, Moody was not involved in any decision made relative to the discipline to be issued to Plaintiff, Sadler, or Blandford. Furthermore, with respect to Rudovich, Plaintiff testified at her deposition that she had no reason to believe that Rudovich was racist or treated her unfairly as a result of her race. (Thomas Dep at 91.)

Even if one believes that Moody somehow concocted the allegations of misconduct, that Rudovich lied about authorizing the price reductions, or that Wofford erred in concluding that Plaintiff violated the Company policy regarding the pre-2003 discontinued items, Plaintiff has failed to show that Wofford, Stach and the other regional managers based their reason to terminate Plaintiff on her race. A plaintiff "cannot prove pretext simply by showing that [defendant's] decision was mistaken or not correct." Joostberns v. United Parcel Service, Inc., 2004 WL 3457633, *7 (W.D. Mich. 2004); Smith v. Chrysler Corp.,

16

155 F .3d 799, 806 (6th Cir. 1998). "The law does not require employers to make perfect decisions, nor forbid them from making decisions that others may disagree with." <u>Hartsel v. Keys</u>, 87 F.3d 795, 801 (6th Cir. 1996). "The employer may fire an employee for a good reason, a bad reason, *a reason based on erroneous facts*, or for no reason at all, as long as its action is not for a discriminatory reason." <u>Nix v. WLCY Radio/Rahall Communications</u>, 738 F.2d 1181, 1187 (11th Cir. 1984) (emphasis added). <u>See also</u> <u>Day v. City of Southfield</u>, 61 F.3d 903 (6th Cir. July 21, 1995).

Finally, the Court concludes that Plaintiff has failed to present any evidence to show that Kmart did not have a good faith basis for its conclusion that Plaintiff violated Company policy. The record reflects that on October 8, 2003, Plaintiff activated 90% price reductions on pre-2003 discontinued items; that Plaintiff had been provided and had read Kmart's price reduction policy; that Plaintiff knew that under the policy, Kmart corporate headquarters limited the amount that she or Rudovich could decrease the price on Pre-2003 items to 10% of the previous price; and that on the same day Plaintiff violated this policy, she purchased many of the reduced items. Ed Rudovich denied authorizing the price reductions in question. Operational District Manager James Wofford reviewed the investigation, consulted with other regional managers and Stach, and determined that termination of Plaintiff was proper. Wofford clearly had particularized facts before him which could reasonably be relied upon to support his decision to terminate Plaintiff. <u>Braithwaite</u>, 258 F.3d at 494. While the Plaintiff is certainly entitled to disagree with the ultimate employment decision made by Wofford to terminate her employment, Plaintiff has failed to present any evidence that

17

Wofford did not have a reasonable basis for concluding that Plaintiff violated Company policy.

Accordingly, the Court finds that Plaintiff has failed to produce evidence that the reasons given by Defendant for her discharge were pretextual, and has failed to allege any facts tending to show that Defendant made the decision to terminate her on the improper basis of Plaintiff's race. Summary judgment in favor of Defendant on Plaintiff's Title VII race discrimination claim is therefore proper.

### IV. CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED** that Defendant Kmart Corporation's Motion for Summary Judgment [DN 49] is **GRANTED.  IT IS FURTHER ORDERED** that the Motion by Defendant to Strike Exhibits [DN 62] is **DENIED**.


cc: counsel of record